SIDNEY W. SINSHEIMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11068.  Promulgated August 22, 1927.

Loss sustained on sale of a residence property allowed.

*R. H. Hart, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

This is an appeal from the determination by respondent of a deficiency of $1,549.48 in income tax for the year 1919. It is alleged that respondent erred in disallowing a deduction from gross income of $9,418.57, the loss sustained by petitioner upon the sale of a residence and adjoining building lots.

### FINDINGS OF FACT.

The petitioner is an individual, a citizen of the United States, and during the years 1917, 1918, and 1919 was a resident of Denver, Colo.

In 1917 petitioner purchased a parcel of unimproved land 150 by 290 feet, comprising twelve building lots in that section of Denver known as Country Club Place. This block was the edge block of a fairly well developed district, but at the time of the purchases by petitioner there was only one house on this particular block. He purchased the land as an investment, with the intention and expec-

tation of reselling at a profit, and did not then expect to build on it. He was advised by real estate brokers with whom he consulted that it was a good speculation, and that the city would develop in the direction of this property. Land values, however, did not increase as rapidly as he had anticipated, and he decided that improved property would be more attractive. Accordingly, some months later he began construction of a house on a part of the land, expecting to supervise the work himself. His duties with the Holly Sugar Corporation, of which he was vice president and general manager, which took him out of the city about half of his time, and as a member of the Sugar Distributing Committee of the United States Food Administration, prevented his supervising the construction of the house to the extent he had expected, with the result that it cost more than he had anticipated.

Ground was broken for the house on January 18, 1918, the house and lawn together covering three or four lots. The construction of the house was partly completed, i.. e., it was equipped against the elements, in October, 1918, but practically none of the interior work, decorating, etc., was finished nor was it entirely completed at any time during petitioner's ownership. Certain features were incorporated in the construction of the house that would have been unnecessary had petitioner built for his own occupancy. It was larger than he needed; the electric light wiring was duplicated to permit of central or side lighting; the plumbing was so installed that the laundry might be placed either on the first floor or in the basement; some of the rooms and halls were so arranged that they might be used as part of the house proper or set apart as servants' quarters; and the first-floor windows were cut to the floor and then boarded up so that French windows might be installed if desired.

The house was exceptionally well built and readily adaptable to the tastes of any owner. The whole parcel of land was at no time subdivided into building lots. Petitioner constructed his house upon a small portion thereof so that the remainder of the parcel could be divided and sold independently of the improved portion. The balance of the property was not improved during petitioner's ownership.

In 1917 petitioner had been married for thirteen years and was then living with his wife. He had no children except one adopted son, aged five years. At the time he purchased this property domestic difficulties had arisen between him and his wife, who was then threatening to seek a divorce. She objected to his building the house and continued to object strenuously throughout the eight-month period of its construction, all the while continuing her threats of divorce. Before and during construction of the house she consulted a lawyer relative to a divorce.

When construction of the house was sufficiently advanced to be habitable, petitioner moved into it, installing only such furnishings as he required. Later, about the 22d or 25th of October, 1918, his wife moved in and remained until some time in December, when she left. In the spring of 1919 she returned and lived in the house for approximately a month, during which time she was again consulting with her lawyer relative to a divorce. With the exception of these two brief periods she at no time occupied the house. Petitioner's adopted son was with his mother most of this time and subsequently was in a boarding school. In March, 1919, petitioner's wife directed her attorney to begin action for a divorce and in May, 1919, her bill of complaint was filed. She obtained an interlocutory decree in July, 1919, and a final decree in February, 1920.

Before the house was completed petitioner advised his real estate broker that he desired to sell the entire parcel as soon as possible and placed it in his hands for sale. The broker secured a purchaser for the house and the entire parcel, but at a price less than the cost. He advised petitioner that there was not a ready market for as good a house as his and that, although he might get more in six months or a year, it would be better to sell at a loss and thereby save the carrying charges. Because of the burden of carrying it, and also because he needed money to settle his divorce matters, petitioner decided to sell the property even at a loss. The entire property was sold in November, 1919, and delivered to the purchaser in December, 1920.

Petitioner did not construct the house as a residence for himself, his wife or his adopted son. He built with the view of selling at a profit and making the remainder of the parcel more attractive to purchasers.

The property cost the petitioner $66,225.32 and he sold it for $56,806.75. Petitioner sustained a loss of $9,418.57, not compensated for by insurance or otherwise.

### OPINION.

VAN FOSSAN: Section 214(a)(5) of the Revenue Act of 1918, so far as material, provides:

That in computing net income there shall be allowed as deductions:

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

The uncontradicted facts in this appeal convince us that petitioner purchased this parcel of land and constructed a house on a portion thereof with the intention of selling the same at a profit. It is also

clear that petitioner did not build the house as a residence for himself and family or any of them. Under the peculiar circumstances here the fact that he and his wife occupied the house for a brief period does not render the transaction any the less one entered into for profit. See *Appeal of Helen Converse Thorpe*, 3 B. T. A. 1006. We are of the opinion that the loss suffered by petitioner upon the sale of this property was sustained in a transaction entered into for profit and that he is entitled to deduct such loss in computing his net income for the year 1919. Cf. *Tindle* v. *Heiner*, 18 Fed. (2d) 452.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.